# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| **JOSHUA ISAACS, On Behalf of Himself** ) <br> **and All Others Similarly Situated,** ) <br> ) <br>     **Plaintiff,** ) <br> ) <br> **v.** ) <br> )     **Case No. 3:23-cv-00210** <br> **LANDMARK RECOVERY OF** )     **Judge Aleta A. Trauger** <br> **LOUISVILLE, LLC,** ) <br> ) <br>     **Defendant.** ) | |

## MEMORANDUM

Before the court is plaintiff Joshua Isaacs' Motion for Conditional Class Certification and for the Issuance of Court-Supervised Notice ("Motion for Notice") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).[1] (Doc. No. 20.) As set forth herein, the motion will be granted in part and denied in part. The motion will be denied to the extent it seeks "conditional certification," a term that no longer has a place in FLSA actions in the Sixth Circuit, but granted in part, insofar as it seeks authorization for court-facilitated notice to potential plaintiffs of this collective action. The court, however, will not approve the proposed Notice as submitted by the plaintiff but will require the plaintiff to revise the Notice, in conference with the defendant, and resubmit the proposed Notice for the court's approval.

## I.  FACTS AND PROCEDURAL BACKGROUND

On March 9, 2023, Isaacs filed a Collective and Class Action Complaint (Doc. No. 1) on

---

[1] As discussed below, in addition to the FLSA claim, the Complaint seeks to bring a class action under Kentucky statute, but the present motion is addressed only to the plaintiff's FLSA claim and does not seek certification of a class under Rule 23.

behalf of himself and other similarly situated current and former hourly employees who worked for defendant Landmark Recovery of Louisville, LLC ("Landmark"), at any time within the three years prior to the filing of the Complaint (*i.e.*, between March 9, 2020 and March 9, 2023). The Complaint sets forth claims for (1) violation of the FLSA's overtime wage provision, 29 U.S.C. § 207 and (2) violation of the Kentucky Wages and Hours Act, KRS 337.010, *et seq.*, with respect to which the plaintiff seeks to bring a "class action pursuant to Federal Rule of Civil Procedure 23." (Doc. No. 1, at 1 & Counts I and II.) Only the FLSA claim is at issue here. With the Complaint, the plaintiff filed Consent to Join forms completed by 13 "opt-in" plaintiffs.[2] Since the filing of the Complaint through the date of this opinion, the plaintiff has filed Consent to Join forms for approximately 40 additional opt-in plaintiffs.

The plaintiff alleges that Landmark owns, operates, and manages a "collection of addiction treatment centers" located in 15 different states.[3] (Doc. No. 1 ¶ 11 & n.1.) The plaintiff asserts that Landmark actually operates its facilities through numerous other entities, all of which are under common management, ownership, and financial control. (*Id.* ¶ 12.) According to the plaintiff, Landmark is a "joint employer with and/or a single integrated enterprise of employees working at the various registered entities." (*Id.*) Landmark's corporate address and headquarters is in Franklin, Tennessee. Landmark's gross annual revenue exceeds $500,000. (*Id.* ¶ 28.)

The plaintiff alleges that he was employed by Landmark as a Patient Engagement Specialist ("PES") at its "Praxis of Louisville" facility in Louisville, Kentucky from May 2021 until December 2021. (*Id.* ¶ 6.) He was employed as an hourly, non-exempt employee, meaning that he

---

[2] The court nonetheless refers herein to Isaacs, in the singular, as the "plaintiff" or "lead plaintiff."

[3] Landmark represents that it operates 14 addiction centers in 9 states. (Doc. No. 40-7, Roy Decl. ¶ 5.)

was entitled to overtime pay for any hours over 40 worked in a particular workweek. (*Id.* ¶ 6.) *See also* 29 U.S.C. § 207(a)(1). He alleges that he worked more than 40 hours per week in one or more workweeks. (Doc. No. 1 ¶ 6.) He also states that he was a "direct care employee" (*id.* ¶ 6), a term the Complaint defines as "including but not limited to Patient Engagement Specialists, Licensed Practical Nurses, therapists, therapist assistants, medical assistants, and aides." (*Id.* at 9 n.3).

During Isaacs' employment, Landmark required each hourly, direct care employee to take a 30-minute meal break, and it had a policy pursuant to which it automatically deducted 30 minutes per shift from Isaacs' and similarly situated employees' times. However, Isaacs alleges that he "and similarly situated employees" were often "unable to take a full 30-minute meal break and had their meal breaks interrupted or otherwise shortened by having to perform substantive work duties." (*Id.* ¶ 7.) As a result, according to Isaacs, Landmark's meal policy resulted in his and other similarly situated employees' not being "fully and properly paid for all of their hours worked in violation of the FLSA." (*Id.*) He alleges that Landmark "suffered or permitted" Isaacs, the opt-in plaintiffs, and other similarly situated "direct care employees" to perform work during their meal breaks, even though it "still deducted such time from employees' work hours," and that it "applied or caused to be applied substantially the same employment policies, practices, and procedures to all direct care employees at all of [Landmark's] locations," including policies "relating to the payment and calculation of wages as well as overtime, meal break deductions, and timekeeping." (*Id.* ¶¶ 22, 25.) Elsewhere in the Complaint, the plaintiff reiterates and elaborates slightly on these allegations, asserting that he and the defendant's other similarly situated direct care hourly employees were eligible for overtime pay, worked more than 40 hours per workweek in one or more workweeks, and were often unable to take a bona fide meal break, because the defendant's facilities were frequently understaffed and the employees were too busy to take lunch breaks, but

the daily 30-minute break was deducted from the plaintiff's and other hourly direct care employees' hours, regardless of whether they received a full 30-minute lunch break. (*Id.* ¶¶ 31–36.) Isaacs further alleges that Landmark had "actual or constructive knowledge that it was not compensating" Isaacs, the opt-in plaintiffs, and other similarly situated direct care employees for all hours worked or for all overtime due. (*Id.* ¶¶ 37–39.) The plaintiff alleges that the defendant's conduct was knowing and willful. (*Id.* ¶ 44.)

Isaacs seeks to pursue his overtime claims under 29 U.S.C. § 216(b) as a collective action on behalf of himself, the current opt-in plaintiffs, and "all other similarly situated direct care employees" who "opt in" as plaintiffs. He seeks the court's facilitation of notice of the collective action to all potential plaintiffs, including:

> All current and former hourly, non-exempt direct care employees[4] of Defendant outside Ohio[5] who were paid for at least forty (40) hours of work in any workweek that they had a meal break deduction applied to their hours worked beginning three years preceding the filing of this Complaint and continuing through the final disposition of this case[.].

(Doc. No. 1 ¶ 46.) The plaintiff alleges that he, the current opt-in plaintiffs, and the potential opt-in plaintiffs are "similarly situated under the FLSA because they were subjected to the companywide unlawful payroll policies and/or practices" described in the Complaint. (*Id.* ¶ 47.) Under the FLSA, the plaintiff seeks unpaid overtime compensation, liquidated damages, interest,

---

[4] Again, the Complaint broadly defines this term to "include[] all hourly direct care employees, including but not limited to Patient Engagement Specialists, Licensed Practical Nurses, therapists, therapist assistants, medical assistants, and aides." (Doc. No. 1, at 9 n.3.)

[5] The plaintiff represents that, before this case was filed, a similar case was filed in the Northern District of Ohio ("Ohio lawsuit"). *See Hale v. Landmark Recovery of Ohio*, No. 3:22-cv-02011 (N.D. Ohio Nov. 7, 2022). In light of a dispute regarding "personal jurisdiction over non-Ohio Plaintiffs, Named Plaintiff filed this action in the jurisdiction where Defendant is headquartered." (Doc. No. 21, at 2.) The present case excludes employees who worked for Landmark in Ohio and who thus fall within the definition of the similarly situated employees who are eligible to participate in the *Hale* collective action.

attorney's fees, "and all other remedies available," on his own behalf and on behalf of all current and potential opt-in plaintiffs. (*Id.* ¶ 69.)

Landmark filed an Answer admitting the court's subject-matter and personal jurisdiction and generally admitting that it is subject to the FLSA but denying liability and denying that it is a joint employer with its various subsidiaries. (Doc. No. 44.) Landmark asserts, among other affirmative defenses, that it is not a joint employer of the named plaintiff and that this case may not be maintained as a collective action, because "no common questions of fact or law exist." (*Id.* at 11, 13.)

The plaintiff filed his Motion for Notice along with a supporting Memorandum of Law (Doc. Nos. 20, 21) and, among other exhibits, his own Declaration and the Declarations of eight other current or former Landmark employees. (Doc. No. 22 and attachments.) The plaintiff requests that the court conditionally certify a collective consisting of all current and former "direct care" employees who worked at any Landmark facility outside the state of Ohio at any time during the three years preceding the filing of the Complaint and that the court authorize the notice to be sent to potential plaintiffs eligible to join in the collective action. (Doc. No. 20, at 1–2.)

In the Declaration submitted with his Motion for Notice, the plaintiff attests under oath to facts consistent with the allegations in the Complaint, but with a few additional details. He avers that he was employed from May through December 2021 as a non-exempt PES at the Praxis of Louisville by Landmark Recovery facility in Louisville, Kentucky; he "provided care and assistance to Landmark's patients," was paid on an hourly basis, and worked 40 or more hours in one or more workweeks. (Doc. No. 22-1 ¶¶ 3, 5–7.) He purports to have personal knowledge of Landmark's "companywide policy of requiring a 30-minute deduction from its hourly employees' daily hours worked for a meal break" and its practice of making "this deduction regardless of

whether or not its hourly employees were actually able to take a fully uninterrupted meal break." (*Id.* ¶ 8.). He asserts that he and other Landmark employees were frequently "unable to take a 30-minute uninterrupted meal break because we were very busy and had to tend to the needs of our patients regardless of whether we were trying to take a meal break." (*Id.* ¶¶ 10–11.) He claims that he worked with, spoke to, and observed other employees who were unable to take an uninterrupted meal break but that "Landmark still deducted 30 minutes from our daily hours worked either by adding or otherwise applying a meal break deduction or having us clock out for meal breaks that we either did not take or were interrupted with job duties." (*Id.* ¶ 12.)

According to the plaintiff, Landmark did not train him on "what constituted a bona fide meal period" and failed to train him on or show him "any policy and/or procedure whereby its employees could report missed or interrupted meal breaks" and receive compensation for that time. (*Id.* ¶ 13.) He claims that he and other employees "complained to management about not being able to take [meal] breaks on a regular basis," as a result of which Landmark was aware of the problem and knew that its employees were not being fully compensated but nonetheless continued to apply the automatic 30-minute meal deduction from employees' time. (*Id.* ¶¶ 14, 15.)

The Declarations submitted by eight opt-in plaintiffs (James Black, Kala McCarty, Daijah Williams, Jodi Rudio, Keyna Salley, Shania Smith, Theresa Marcell, and Warren Englert) are nearly identical to that of Isaacs, insofar as these individuals, too, aver that they worked as non-exempt hourly PES employees for Landmark for some period of time between 2020 and 2023, were often unable to take meal breaks, were not trained on what constituted a *bona fide* meal period, were not trained on the policy for being compensated for meal time when they had to work through all or part of their meal breaks, were personally aware of other direct care employees in the same situation, and were not compensated for meal periods that they worked through. They all

claim that Landmark knew that this was happening because "[they] and other employees complained to management" and that Landmark nonetheless applied the automatic meal deduction. (*See, e.g.*, Doc. No. 22-9 ¶ 20.) Including the plaintiff, these nine employees worked at seven different Landmark facilities in three different states—Oklahoma, Indiana, and Kentucky.[6]

The experiences reported by two individuals employed as PESs at Landmark's Oklahoma City facility (Daijah Williams, from December 2021 to December 2022 (Doc. No. 22-4) and Jodi Rudio, from March 2021 to March 2022 (Doc. No. 22-5)) vary slightly from the others. Rudio avers that, when he began working there in March 2021, there was "purportedly" a missed meal break form, but "several weeks into [his] employment this process was removed by management and [the employees] were instructed to take [their] breaks." (Doc. No. 22-5 ¶ 14.) Similarly, Williams claims: "On at least one occasion, I brought up my inability to take a full, uninterrupted daily meal break to my supervisor, who dismissed my concerns by saying that I just had to make sure I was taking my breaks." (Doc. No. 22-4 ¶ 14.) In addition, Theresa Marcell, who worked at one of Landmark's Louisville, Kentucky facilities, states that, when she and other employees attempted to use Landmark's purported policy for reporting missed meal breaks, they "were told by [their] supervisors that if [they] were sitting in the cafeteria monitoring the patients that counted as a meal break." (Doc. No. 22-8 ¶ 19.) None of the other Declarations provides any additional detail about purported complaints to management.

The plaintiff asserts that the Declarations he filed in support of the Motion for Notice describe "the same policies and practices regardless of location," that the facilities were all

---

[6] In his Reply, the plaintiff asserts that, considered together, the opt-in plaintiffs who have already filed Consents to Join hail from 10 Landmark facilities located in various states. (Doc. No. 57, at 8.) According to the defendant, the potential plaintiffs altogether comprise approximately 1,700 former and current employees. There has been no actual proof entered into the record regarding the total number of potential plaintiffs or the number of non-Ohio facilities involved.

regularly understaffed such that employees were regularly unable to take a meal break, that Landmark knew about the "unpaid worktime" because the plaintiff and other employees complained about "not being paid for such time even though they were working during their breaks." (Doc. No. 21, at 5 (citing Isaacs Decl., Doc. No. 22-1).) He claims that he and other hourly non-exempt "direct care" Landmark employees are similarly situated, insofar as they were all: (1) paid by the hour; (2) subject to the automatic 30-minute meal break deduction from their time worked, regardless of whether they actually took the break; (3) they were often unable to take a break or to take a full break, due to work demands; (4) Landmark did not train or adequately inform them about what constituted a "bona fide" meal break or what procedure to follow to ensure that they would be paid for missed, interrupted, or shortened meal breaks; (5) they worked more than 40 hours in one or more workweeks or would have worked more than 40 hours in one or more workweeks if their time had not been reduced by the automatic meal break time deduction; and (6) the deduction of 30 minutes from their daily hours worked when they did not actually take a meal break resulted in unpaid overtime wages. (Doc. No. 21, at 6.) The plaintiff asserts, simply, that he and similarly situated hourly employees were all "paid in the same manner and subject to the same companywide policy and/or practice that resulted in FLSA overtime wage violations." (*Id.*) He contends that his and the other Declarations establish that there are "other current and/or former similarly situated employees who are interested in joining this lawsuit and who would want to receive notice of this lawsuit." (*Id.* at 7 (citing Doc. Nos. 22-1 through 22-9).)

The plaintiff also filed as an exhibit to his motion Landmark's Employee Handbook, last updated on October 31, 2022, which states, in relevant part, as follows concerning Landmark's timekeeping, payroll, and meal break policies:

Accurately reporting time worked is the responsibility of every employee. Landmark must keep an accurate record of time worked to calculate pay and benefits.

. . . .

*Time Worked*: Time worked includes all time that an employee is required to be performing duties for the company. Time worked is used to determine overtime pay required for non-exempt employees. . . .

*Time Clock*: All non-exempt employees must clock in and out of work daily using the facility time clock. Landmark retains record of employee's attendance and time worked for 7 years. Time-clock punches will serve as the basis for paying non-exempt employees.

. . .

*Meal Periods*: Each non-exempt employee receives one 30-minute meal period per shift. Employees must take these meal periods even if they choose not to eat a meal. These meal periods are unpaid, and employees must clock out at the start of the meal period and clock back in at the end of the meal period.

. . . .

*Changing Records*: No employee may alter a punch time without a Punch Time Change Form signed by the employee and supported by the signature of a witness, the time stamp on an email or an entry to the EMR. Employees who forget to sign in or out should request a Punch Time Change Form from the BOM or Executive Director as quickly as possible. Changing punch times without proper documentation and approval from the employee [sic] is grounds for disciplinary action up to and including termination.

(Doc. No. 21-1, at 17–18.)

He also filed a copy of Landmark's formal Timekeeping and Payroll Corporate Policy updated on November 18, 2022, which similarly states:

*Meal Periods*: Each non-exempt employee receives one 30-minute meal period per shift. Employees must take these meal periods even if they choose not to eat a meal. These meal periods are unpaid, and employees must clock out at the start of the meal period and clock back in at the end of the meal period. The employee must receive permission from his or her supervisor or the supervisor on duty prior to taking the meal period. Exempt employees are likewise limited to 30-minute meal periods. Employees are not required to remain on-premises when taking meal periods. When circumstances require employees to work through their meal period, employees should fill out the Time Exception Form and have their supervisor sign it. For all questions or concerns regarding pay for meal periods that employees were

asked to skip, employees should contact Employee Relations at erc@landmarkrecovery.com. Please note, when only two employees are on premises for a shift, the employees may not clock out for meal periods and must remain available for duty during meal periods.

(Doc. No. 21-2, at 3–4.) According to Isaacs, these documents confirm that (1) a "single set of policies and/or practices governs all employees and applies to all Landmark Recovery facility locations" and (2) Landmark has an actual policy governing timekeeping by hourly non-exempt direct care employees.

In addition, the plaintiff filed a copy of Landmark's blank "Meal Deduction Authorization Form." (Doc. No. 21-3.) This document contains spaces for each new employee to print, sign, and date, memorializing the employee's understanding of the automatic meal deduction policy. It states:

I understand that I am entitled to receive an unpaid meal break of not less than 30 minutes during which I am relieved of all duties. This waiver will serve to authorize Landmark Recovery or its affiliates to automatically deduct 30 minutes from the hours I work during my shift of six hours or more for the purpose of a meal break. I understand that if I cannot take my meal break, it is my sole responsibility to fill out a Time Exception Form and have it signed by my department manager to notify the payroll department to remove the 30-minute deduction.

(*Id.*) According to the plaintiff, this form further establishes the existence of Landmark's meal deduction policy. The plaintiff characterizes the form as "purport[ing] to 'waive' certain FLSA rights and places hurdles to receive pay for work performed when [an employee] is unable to take a 'bona fide' meal break." (Doc. No. 21, at 8.) "This common, companywide policy and/or practice is at the core of this case." (*Id.*)

Finally, the plaintiff filed a copy of Landmark's standard "Time Exception Form," which provides space for an employee to enter his or her name and columns for inserting the date of occurrence, time in and out, and reason for missed or corrected punch. (Doc. No. 21-4.) The plaintiff acknowledges that Landmark "claims that this form was also intended" to be used by

employees reporting missed meal breaks. (Doc. No. 21, at 9.) The plaintiff characterizes the form as further evidence of Landmark's "uniform, companywide policies and practices" that apply to plaintiff and the other members of the proposed Collective. (*Id.*)

The plaintiff's Memorandum in support of the Motion for Notice argues that the court should apply the standard for "conditional certification" of a collective recognized by the Sixth Circuit in *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546-47 (6th Cir. 2006). He argues that this standard is lenient and that he has met it by establishing that he and the potential opt-in plaintiffs—consisting of all "direct care," non-exempt, hourly employees at all of Landmark's facilities outside Ohio—are similarly situated for purposes of the FLSA, such that conditional certification and court-authorized notice to potential plaintiffs are appropriate. The plaintiff requests that the court adopt the proposed Form of Notice and Consent Form and the plaintiff's proposed procedure for notifying potential opt-in plaintiffs. (Doc. No. 21, at 13–17.)

Landmark filed a Memorandum in Opposition to the plaintiff's Motion for Notice, as well as its own employee Declarations and various documents. (Doc. Nos. 39, 40-1 through 40-13.) It argues, generally, that the court should not apply the "lenient" standard for which the plaintiff advocates, in light of the then-pending appeal in *Holder v. A&L Home Care & Training Center*, 552 F. Supp. 3d 731, 746 (S.D. Ohio 2021), and should instead apply the more rigorous standard adopted by the Fifth Circuit in *Swales v. KLLM Transportation Services, L.L.C.*, 985 F.3d 430, 434 (5th Cir. 2021).

It also contends that, regardless of what standard applies, conditional certification and court-authorized notice are not warranted here, because Landmark's meal break policy, including the practice of automatically deducting time for a 30-minute lunch break, is lawful under the FLSA, as long as the employer makes methods available to employees for reporting missed meal

breaks and being compensated for that time. It contends that the record already available in this case—including the employee Declarations that Landmark has introduced and the Time Exception Forms actually utilized by some of the plaintiff's declarants and by several opt-in plaintiffs— establishes that Landmark makes Time Exception Forms available to employees, that employees actually use them, and that its actual policy is to pay employees for missed meal breaks. (Doc. No. 39, at 1–2.) It also argues that the plaintiff's own limited proof establishes that the individuals whom the plaintiff seeks to notify about this case are not similarly situated, because they report various reasons for *why* they were not paid for missed meal breaks, including lack of training, "bad local managers" who made the Time Exception Forms unavailable, and other "bad managers" who misapplied the meal break policy, incorrectly telling employees that sitting in the cafeteria monitoring patients counted as a meal break. (Doc. No. 39, at 2.) In other words, Landmark insists that the "individualized, site-specific reasons why company policy was ignored, misapplied, or hidden" at the various Landmark facilities at which the plaintiff's declarants worked show that there is no nationwide practice of ignoring Landmark's stated policy of paying employees for missed meal breaks. (*Id.* at 12.)

At the same time it filed its opposition to the plaintiff's Motion for Notice, Landmark filed a Motion to Stay, asking the court to defer ruling on the plaintiff's motion until the Sixth Circuit issued its decision on the appeal of *Holder*. The Sixth Circuit issued the anticipated decision, *Clark v. A&L Homecare & Training Center, LLC*, 68 F.4th 1003 (6th Cir. 2023), on May 19, 2023, the same day the defendant filed its Motion to Stay. The court, therefore, denied that motion as moot (Doc. No. 46) but, during the case management conference conducted on May 22, 2023, granted the parties leave to supplement their briefing in light of the new standard articulated in *Clark*.

Both parties filed Supplemental Briefs (Doc. Nos. 47, 52) ostensibly to address *Clark*, but the plaintiff also took the opportunity to file three different versions of Landmark's Timekeeping Policy, to show how it has evolved since the Ohio lawsuit was filed, and eleven more employee Declarations (Doc. Nos. 47-1 through 47-14). Thereafter the plaintiff filed a Reply to "address for the first time" Landmark's arguments in its Memorandum in Opposition to the Motion for Notice. (Doc. No. 57, at 1.)

The additional Declarations, despite some minor variations, are essentially identical to each other and to those previously filed by the plaintiff. Most are from employees who worked as PESs, though six are from individuals who held other "direct care" positions, including one Patient Navigator, three Licensed Practical Nurses, and two Registered Nurses. The declarants all state their job position, dates of employment, and which Landmark facility they worked in; that they "provided care and assistance to Landmark's patients" during their employment; that they were non-exempt hourly employees who worked more than 40 hours per week in one or more workweeks; that they have "personal knowledge that Landmark has a companywide policy of requiring a 30-minute reduction from its hourly employees' daily hours worked for a meal break" and that it "made this deduction regardless of whether or not its hourly employees were actually able to take a fully uninterrupted meal break"; that it applied the deduction by subtracting 30 minutes from the employees' hours for each shift worked; that Landmark employees are very busy and, further, that Landmark facilities are "regularly understaffed," such that employees regularly worked through lunch, took shortened lunch breaks, had their lunch breaks interrupted, or, in some cases, were unable to take a lunch break at all; that each employee's experience was not "unique" to him or her, as they all "personally and directly worked with, spoke to, and observed" other hourly direct care employees who were similarly unable to take a lunch break but that Landmark

nevertheless deducted 30 minutes from each shift; that Landmark did not train most of them on "what constituted a bona fide meal period"; that Landmark was aware that its hourly employees were not being fully compensated as a result of this policy of "deducting 30 minutes for meal breaks even though such meal breaks were either not taken or were otherwise interrupted"; and, in some cases, that the employees "know" other employees who are interested in joining this lawsuit and/or "anticipate" that others would want to join if made aware of their right to do so. (*See, e.g.*, Doc. No. 47-4, Allen Decl.) Only two of the new declarants do not allege a lack of training or knowledge of other employees who are interested in joining this lawsuit. Instead, they allege that they personally complained to supervisors or human resources about not being able to take a full, uninterrupted lunch break but received an unsatisfactory response and were not told to fill out a form to indicate missed meal breaks. (*See, e.g.*, Doc. No. 47-7, Campbell Decl.)

The three different versions of Landmark's Timekeeping and Payroll Corporate Policy filed by the plaintiff show that it has evolved over time to become marginally more specific. As of March 2022, the meal break policy stated:

> Meal Periods: Each non-exempt employee receives one 30-minute meal period per shift. Employees must take these meal periods even if they choose not to eat a meal. These meal periods are unpaid, and employees must clock out at the start of the meal period and clock back in at the end of the meal period. The employee must receive permission from his or her supervisor or the supervisor on duty prior to taking the meal period. Exempt employees are likewise limited to 30-minute meal periods. Employees are not required to remain on-premises when taking meal periods. Please note, when only two employees are on premises for a shift, the employees may not clock out for meal periods and must remain available for duty during meal periods.

(Doc. No. 47-1, at 2–3.)

In November 2022, however, the policy was amended (as indicated in the policy previously submitted by the plaintiff) to include this language:

> When circumstances require employees to work through their meal period, employees should fill out the Time Exception Form and have their supervisor sign it. For all questions or concerns regarding pay for meal periods that employees were asked to skip, employees should contact Employee Relations at erc@landmarkrecovery.com.

(Doc. No. 47-2, at 3.) As of April 2023, the sentence above had been modified slightly to state:

> When circumstances require employees to work through their meal period, employees should fill out the Time Exception Form and have their supervisor sign it. For all questions or concerns regarding pay for meal periods that employees were asked to skip, employees should contact Employee Relations using the Employee Relations Report: https://support.landmarkrecovery.com/catalog items/1688933-employee-grievance-report/service requests/new.portal.

(Doc. No. 47-3, at 3.)

Landmark, in conjunction with its Response, filed several employee Declarations, some from employees in management positions and some from hourly employees, generally attesting that hourly direct care employees are rarely required to work through meal breaks, but, when they do, the forms for reporting missed meals are readily accessible, and the employees were all aware of the procedure for reporting missed meals.[7]

Landmark also submitted Meal Waiver Deduction Authorization Forms signed by lead plaintiff Joshua Isaacs and many opt-in plaintiffs (Doc. No. 40-7, at 16–22, 24–56), all of which are identical in content to the blank form submitted by the plaintiff, quoted above (Doc. No. 21-3). In addition, Landmark has shown that at least two opt-in plaintiffs, Theresa Marcell and Warren Englert, reported submitting "Time Exception Forms." (*See* Doc. No. 40-7, at 58–61.) The email exchanges referencing the forms indicates that they concern "missing time punches" and not missed meal breaks.

---

[7] They also indicate that they do not to clock out for meal times, which is actually contrary to Landmark's written policy. (See, e.g., Doc. Nos. 40-3, 40-4, 40-5, 40-6.)

Landmark has filed numerous actual Time Exception Forms, including some that were submitted by opt-in plaintiffs, most of which either do not indicate the reason for the exception or show that it was related to something other than a missed meal break, such as malfunctioning time clocks, working out of the office, training sessions, and so forth. Of the few that report missed lunch breaks, the vast majority appear to date from November 2022 through April 2023. As best the court can tell, one is from 2019 and two (from the same individual reporting a series of missed meal breaks during two pay periods) are from 2021. (*See generally* Doc. Nos. 40-7, 40-8, 40-9, 40-10, 40-11, 40-12.)

Landmark also shows that Jodi Rudio emailed her supervisor at Landmark's Landmark Recovery facility in Louisville nearly every pay period from May 16, 2021 through July 31, 2021 to notify him that she did not take lunch breaks and to "please fix [her] time." (Doc. No. 40-12, at 51.) The record reflects that the supervisor responded positively. Likewise, James Black, at the same facility, emailed the same supervisor in June and July 2021, requesting that his payroll be adjusted to reflect that he did not take lunch breaks for several pay periods. (Doc. No. 40-12, at 42–43, 47–48.) One other opt-in plaintiff, Kala McCarty, emailed her supervisor Jeremy Rix (in Indiana) in November 2022 to ask about how to "document correctly" the fact that she had not taken a lunch break "on any day [she] worked on this pay schedule." (Doc. No. 40-12, at 44.)

According to Adam Stoddard, Landmark's VP of Data, his review of payroll data indicates that, from January 2020 through April 2022, .5 hours for lunch was *not* deducted from hourly employees' payroll 13.46% of the time. (Doc. No. 40-13, Stoddard Decl. ¶ 7.) From April 2022 through May 2023, there were 3,001 manual adjustments to non-exempt employees' hours, 2,280 of which were to *add* hours, which he speculates was to "compensate for the 0.5-hour lunch deduction." (*Id.* ¶ 9.)

## II.    LEGAL STANDARD

The FLSA requires employers to "pay overtime to most employees who work more than 40 hours a week." *Pierce v. Wyndham Vacation Resorts, Inc.*, 922 F.3d 741, 745 (6th Cir. 2019) (citing 29 U.S.C. § 207(a)(1)). The statute permits employees alleging a violation of this provision to bring suit on their own behalf and that of "other employees similarly situated." 29 U.S.C. § 216(b). However, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* In other words, this provision establishes only two requirements for a collective action under the FLSA: (1) the additional plaintiffs must "actually be 'similarly situated'"; and (2) they must "signal in writing their affirmative consent to participate in the action." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). The statute does not define "similarly situated" or prescribe the process for adding other plaintiffs to a collective action.

In *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989), the Supreme Court held that "district courts have discretion, in appropriate cases, to implement" Section 216(b), "by facilitating notice to potential" members of a Section 216(b) collective action. *Id.* at 169–70. In the absence of additional guidance as to how such a procedure would work, most district courts, following *Hoffman-LaRoche*, "adopted a two-step approach first described in" *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 361 (D.N.J. 1987). *Clark*, 68 F.4th at 1008. Under *Lusardi*'s "fairly lenient" "first step—called 'conditional certification'—a district court [could] facilitate notice of an FLSA suit to other employees" based on a "'modest factual showing' that they [were] 'similarly situated' to the original plaintiffs." *Id.* (citation omitted). At the second step, conducted after discovery, the district court would decide whether the "other employees" were actually "similarly situated to the original plaintiffs." *Id.* If so, the court would grant "final certification" for the case to proceed to decision as a collective action. *Id.* (citation omitted). The Sixth Circuit had acknowledged this

procedure but, until now, had never formally either approved or disapproved it. *See, e.g.*, *Holder*, 552 F. Supp. 3d at 741 ("Our circuit . . . does not appear to have expressly adopted *Lusardi*, although [it] has acknowledged that district courts use the bifurcated certification framework.").

As noted above, the Sixth Circuit issued *Clark* in May of this year. The court began its analysis in that opinion by "reject[ing] *Lusardi*'s characterization of the notice determination as a 'certification,' conditional or otherwise." 68 F.4th at 1009. As the court explained, a § 216(b) collective action is not a class action, and the plaintiff is not a representative of any other participants in the case. Rather, "the district court simply adds parties," who "affirmatively choose to become parties by opting into the collective action." *Id.* (quoting *Canaday v. Anthem Cos.*, 9 F.4th 392, 402 (6th Cir. 2021)). In other words, the determination of whether to authorize court-facilitated notice to potential opt-in plaintiffs has "zero effect on the character of the underlying suit." *Id.*

The court did not otherwise reject the two-step procedure, however. Instead, after confirming that "the term 'certification' has no place in FLSA actions," the court considered what showing of "substantial similarity" the plaintiff must make in order for a district court to facilitate notice to other employees. *Id.* On that point, the court rejected both *Lusardi*'s "lenient," "modest factual showing" approach and the approach adopted in *Swales*, in which the Fifth Circuit "held that court-approved notice may be sent only to employees 'who are actually similar to the named plaintiffs'—meaning, apparently, that the district court must find by a preponderance of the evidence that those employees are similarly situated to the original plaintiffs." *Clark*, 68 F.4th at 1009–10 (quoting *Swales*, 985 F.3d at 434). Instead, borrowing from the preliminary injunction standard, the Sixth Circuit held that, "for a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a 'strong likelihood' that those employees are similarly

situated to the plaintiffs themselves." *Id.* at 1011. The court explained that this level of proof

> requires a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance. The strong-likelihood standard is familiar to the district courts; it would confine the issuance of court-approved notice, to the extent practicable, to employees who are in fact similarly situated; and it would strike the same balance that courts have long struck in analogous circumstances.

*Id.*

The court also stated that, in applying this standard, "district courts should expedite their decision to the extent practicable," particularly in light of the generally applicable two-year statute of limitations contained in the FLSA *Id.* The court noted that, to facilitate resolution of a motion for court-facilitated notice, a district court "may promptly initiate discovery relevant to the motion, including if necessary by 'court order.'" *Id.* (quoting Fed. R. Civ. P. 26(b)(1)).

The majority opinion did not address whether equitable tolling is available under the FLSA. However, two members of the panel wrote separately (one in a concurrence and one in a partial concurrence and partial dissent) to emphasize that equitable tolling should be readily available. The concurrence noted that the heightened standard the Sixth Circuit had announced "with its concomitant discovery . . . may significantly lengthen the period before potential plaintiffs are notified of a pending FLSA lawsuit." *Id.* at 1012 (Bush, C.J., concurring). "As a result, many potential plaintiffs may not learn of the FLSA action until after the limitations period for some or all of their claims has run." *Id.* The concurrence also observed that, without tolling, implementation of the new standard was "likely to deplete remedies Congress has duly provided." *Id.* at 1013. The partial dissent similarly stated that, "given the court's new standard, district courts should feely grant equitable tolling to would-be op-in plaintiffs." *Id.* at 1017 (White, C.J., concurring in part and dissenting in part).

The *Clark* majority opinion also did not "address the underlying threshold for FLSA similarity, which remains the same." *Id.* at 1020. Historically, courts in the Sixth Circuit have looked to three "non-exhaustive" factors to determine whether members of the collective action are similarly situated:

> (1) the "factual and employment settings of the individual[] plaintiffs"; (2) "the different defenses to which the plaintiffs may be subject on an individual basis"; and (3) "the degree of fairness and procedural impact of certifying the action as a collective action."

*Monroe v. FTS USA, LLC*, 860 F.3d 389, 397 (6th Cir. 2017) (quoting *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009); *see also Pierce v. Wyndham Vacation Resorts, Inc.*, 922 F.3d 741, 745 (6th Cir. 2019). Plaintiffs are similarly situated if they can demonstrate that they suffered from "a single, FLSA-violating policy" instituted by the employer defendant, or if their "claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Monroe*, 860 F.3d at 398 (quoting *O'Brien*, 575 F.3d at 584–85). "'Where Defendants have demonstrated a formal policy to comply with the law and compensate employees for all time worked, Plaintiffs may satisfy their burden by producing substantial evidence of a *de facto* policy of circumventing the law.'" *Fenley v. Wood Group Mustang, Inc.*, 325 F.R.D. 232, 242 (S.D. Ohio 2018) (quoting *Cornell v. World Wide Bus. Servs. Corp.*, No. 2:14-CV-27, 2015 WL 6662919, at *3 (S.D. Ohio Nov. 2, 2015); *see also Kutzback v. LMS Intellibound, LLC*, 301 F.Supp.3d 807, 817 (W.D. Tenn. 2018).

## III.    DISCUSSION

As an initial matter, insofar as the plaintiff's motion seeks "conditional certification," the motion will be denied, as *Clark* officially laid to rest the entire concept of "conditional certification," at least in the Sixth Circuit. The only matter the court must consider at this juncture is whether to authorize court-facilitated notice to potential opt-in plaintiffs, for purposes of

permitting them, at least provisorily, to submit Consents to Join in this collective action. That determination depends upon whether the plaintiff has "show[n] a 'strong likelihood' that those employees are similarly situated to the plaintiff[] [himself]." *Clark*, 68 F.4th at 1011.

### A. Whether to Authorize Court-Facilitated Notice

The law in the Sixth Circuit is clear that "[a]n automatic meal deduction system is lawful under the FLSA," as long as the employer "establishes a reasonable process for an employee to report uncompensated work time." *White v. Baptist Mem. Health Care Corp.*, 699 F.3d 869, 873, 876 (6th Cir. 2012). If an employer establishes such a process, it "is not liable for non-payment if the employee fails to follow the established process." *Id.* at 876. In *White*, the plaintiff failed to show that the employer knew or should have known that she was not being fully compensated and, therefore, that she could not establish an FLSA violation.

Even in the short period of time since *Clark* was issued, district courts have struggled to apply it to cases involving automatic meal breaks and have not always done so consistently, reaching different conclusions on the basis of very similar facts. *Compare, e.g.*, *Gifford v. Northwood Healthcare Grp., LLC*, No. 2:22-CV-4389, 2023 WL 5352509, at *5 (S.D. Ohio Aug. 21, 2023) (granting motion for court-supervised notice on the basis of seven declarations from the lead plaintiff and six opt-in plaintiffs, "describing Defendants' deduction of 30-minutes from the declarant's hours worked, even when the declarant was unable to take a meal break due to substantive work demands" and even though the defendant's formal policies provided that "[e]mployees who work through their meal break will be paid for their time, regardless whether such work was authorized or not"), *with Durbin v. Foundations Health Sols., LLC*, No. 1:22-CV-01719, 2023 WL 5670686, at *1 (N.D. Ohio Aug. 25, 2023) (denying the motion for court-supervised notice despite 18 declarations providing similar attestations).

The plaintiff here argues that the proof submitted satisfies *Clark*'s "strong likelihood" standard and, further, that Landmark's meal break policy "violates the FLSA on its face," insofar as it requires supervisors to sign the Time Exception Forms in order to authorize an exception to its meal break policy. (Doc. No. 47, at 11.) He contends that the requirement of approval violates the FLSA's requirement that employers must pay employees for overtime work suffered or permitted when they have actual or constructive knowledge of such work. (*Id.* at 12 (citing *Craig v. Bridges Bros. Trucking, LLC*, 823 F.3d 382, 388–89 (6th Cir. 2016)).) In other words, he argues that this policy establishes that, even when the defendant has *actual* knowledge that employees are working through meal breaks, it will not pay them "without this prerequisite." (*Id.*)

The plaintiff however, has not presented proof that any Landmark supervisor ever denied a request for a time sheet adjustment based on a missed meal break. That argument, accordingly, is simply a red herring. However, in *Craig*, the Sixth Circuit reiterated the FLSA's requirement that,

> if an employer knows or has reason to believe that an employee is continuing to work in excess of forty hours a week, the time is working time and must be compensated at time-and-a-half, even if the extra work performed was not requested or even officially prohibited.

*Craig*, 823 F.3d at 388 (citations and internal quotation marks omitted). It also applied in the FLSA context its previous description of "reason to believe" and "constructive knowledge" of something as existing "when the employer should have discovered it through the exercise of reasonable diligence." *Id.* at 388–89 (citations omitted). It distinguished the facts of the case before it, where the employee submitted timesheets reflecting overtime work for years, from those in *White*, where the employee never notified her employer that she was working overtime. *Id.* at 389. Under *White*, as recognized in *Craig*, the general rule is that, "if an employer establishes a reasonable process for an employee to report uncompensated work time, the employer is not liable for non-payment

if the employee fails to follow the established process." *Craig*, 823 F.3d at 389 (quoting *White*, 699 F.3d at 876). At the same time, however, *White* recognized an exception for situations in which employers are "otherwise notified of the employees' unreported work," in which case they are "still on the hook for unpaid overtime." *Id.* (citing *White*, 699 F.3d at 876).

This case is not precisely analogous to either *White* or *Craig*. Unlike the plaintiff in *Craig*, the plaintiff and the opt-in plaintiffs did not expressly note their overtime worked or submit Time Exception forms. Unlike in *White*, however, there appears to be a question of fact as to whether the defendant had at least constructive notice that the plaintiff and other direct care employees were regularly working through lunch or experiencing interrupted lunch breaks for which they were not compensated, even though they did not expressly notify the defendant each time they worked through lunch. Thus, while the plaintiff has not established that Landmark's automatic meal break procedure is *per se* invalid, there appears nonetheless to be a question of fact both as to the reasonableness of the procedure for reporting missed meal breaks and its implementation of the policy for automatic meal break deductions. The declarants all allege that they "complained to management about not being able to take breaks on a regular basis yet Landmark still regularly applied the 30-minute meal break deduction." (*See, e.g.*, Doc. No. 47-4, Allen Decl. ¶ 14.) The court construes this allegation to mean that the plaintiff and the other declarants complained that Landmark was not paying them, despite the fact that they were working through lunch, thus putting Landmark on notice of the problem and arguably providing Landmark constructive knowledge, if not actual knowledge, that they were not being fully compensated for all time worked.

Again, to be clear, the plaintiff and the declarants do not allege that Landmark denied express requests to modify their timesheets or otherwise to be paid for missed or shortened meal breaks. Rather, their allegations give rise to an inference that they were not adequately trained as

to what constituted a bona fide meal break or how to request compensation for missed or abbreviated lunch breaks and that Landmark should have known that they were not being fully compensated simply from the fact that the employees complained about missed meal breaks and because Landmark had actual knowledge that the facilities at which the declarants worked were frequently understaffed and, therefore, that the employees often did not have time to take a full meal break. That is, according to the plaintiffs, Landmark should have known that the employees were not being paid for all hours worked. The Declarations submitted by the plaintiff indicate that Landmark's supervisors should have done a better job at monitoring whether the hourly employees were working overtime and getting paid for all hours worked.

Moreover, Landmark's corporate meal break policy—even the April 2023 version—does not distinguish between missed meal breaks and merely shortened or interrupted meal breaks. Instead, it refers to circumstances in which employees are required to "work through their meal period." (Doc. No. 47-3, at 4.) Likewise, the Employee Handbook requires employees to clock out for meals but does not say anything about what happens if they work through meal periods. (Doc. No. 21-1, at 18.) And the Meal Deduction Authorization Form appears to pertain only to situations in which the employee "cannot take [his or her] meal break." (Doc. No. 21-3.) These documents constitute circumstantial evidence that Landmark, at the corporate level, failed to alert supervisors to the need for training on the topic of interrupted or short meal breaks despite knowing that, if it implemented an automatic meal deduction policy, this issue would arise regularly. Landmark's employee Declarations state that *they* all knew about the meal deduction policy, but they do not expressly contradict the plaintiff's declarants' assertions that they were not adequately trained on when they were entitled to pay for interrupted or shortened meal periods.

Finally, as the plaintiff points out, the November 2022 revision to LM's corporate meal break policy came two weeks after the *Hale* lawsuit was filed, and it was altered again several times in the first part of 2023. The Time Exception Form entries submitted by Landmark show a marked shift in the number of requests for exceptions related to meal breaks beginning in late 2022. According to the plaintiff's calculations, of "the approximately 954 total Punch Time Exception Form entries" Landmark submitted with its Response, "822 (or 86%) of them are for reasons unrelated to meal breaks, such as time clock malfunctions, training periods, and forgetting to clock in for a shift" and only 132 "explicitly mention missed or worked-through meal breaks as a reason for the adjustment." (Doc. No. 47, at 8.) Of that 132, "104 (nearly 80%) of them occurred after" Hale was filed in November 2022. Conversely, 97% of the 824 pre-Hale entries "made no mention of missing a meal break," while 80% of the 130 post-Hale entries "did mention missing a meal break." (*Id.*) The timing of events is further circumstantial evidence of a lack of training on the meal break policy.

Based on all of the evidence thus far presented, the court finds that the plaintiff has established that there are other similarly situated hourly, non-exempt employees who were not fully compensated for automatically deducted time for meal breaks and suffered from Landmark's failure to adequately train employees as to what constitutes a *bona fide* meal break for which they were entitled to request compensation in the first place. The evidence presented, including the plaintiff's Declarations and the number of opt-in Consents to Join already filed, is sufficient to establish the requisite "strong likelihood" that the lead plaintiff, current opt-in plaintiffs, and potential opt-in plaintiffs are similarly situated employees under the FLSA.

The court acknowledges *Clark*'s admonition that the applicable standard "requires a showing greater than the one necessary to create a genuine issue of fact, but less than the one

necessary to show a preponderance." *Clark*, 68 F.4th at 1011. This standard, notably, does not apply (at this juncture) to the *merits* of the plaintiff's claim, but only to the "similarly situated" requirement. Applying that standard, the court has also taken into consideration the defendant's Declarations and other evidence but finds that none of the defendant's evidence suggests implementation of the meal break policy in a manner that would have been effective to notify individual employees when they needed to request an adjustment of their time records or how to do so effectively.

While the defendant is correct that its meal break deduction policy is not facially invalid under FLSA, the court is not persuaded by its other arguments in opposition to the Motion for Notice. As for its contention that the plaintiff's declarants' varying reasons for why they were not paid for missed meal breaks establish that they are not similarly situated, the court finds that the differing reasons, at their core, all relate to a lack of training, whether of the supervisors or of the employees themselves. Insofar as the defendant has submitted Declarations suggesting that some managers at some locations "adhere to the meal break policy," the Declarations say nothing about training at any level on what constitutes a bona fide meal break.[8] Insofar as the defendant relies on *Saleen v. Waste Management., Inc.*, 649 F. Supp. 2d 937 (D. Minn. 2009), to argue that "the proof already shows that a collective action would devolve into highly individualized, site-by-site and manager-by-manager inquiries" and that the "[p]resentation of representative proof on a nationwide scale will simply not be possible" (Doc. No. 39, at 17), the Sixth Circuit has long recognized that plaintiffs in a collective action can show that they are similarly situated if their

---

[8] Moreover, there is a conflict between the actual policy as written (which requires employees to clock out and back in for lunch breaks) and the policy as implemented according to the defendant's Declarations, in which the declarants state that they do not clock out for meal breaks.

"claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Monroe*, 860 F.3d at 398.[9]

The court also does not construe the plaintiff's claim as hinging upon his ability to prove a company-wide "policy to violate the [written] policy," as the defendant argues. (*See* Doc. No. 39, at 17.) Instead, the plaintiff questions the reasonableness of the policy itself and Landmark's actual or constructive knowledge that employees were not being fully compensated for all time worked. The meal break policy and the Meal Break Deduction Authorization Forms, as written, do not distinguish between missed meal breaks and shortened or interrupted meal breaks, and there is no evidence in the record from the defendant to contradict the plaintiff's contention regarding the lack of training on what constitutes a bona fide meal break.

Additional discovery may establish that the defendant is not liable, but at this juncture, the plaintiff has presented sufficient evidence of other similarly situated employees to warrant granting the Motion for Notice.

### B.     The Scope and Content of the Notice

The plaintiff requests that the court authorize notice to all potential members of the collective action, which he characterizes as including:

> All current and former hourly, non-exempt direct care employees of Defendant outside Ohio who were paid for at least forty (40) hours of work in any workweek that they had a meal break deduction applied to their hours worked beginning three years preceding March 9, 2023 and continuing through the final disposition of this case.

(Doc. No. 20, at 1.) He has submitted a proposed "Notice of Pending Fair Labor Standards Act

---

[9] Moreover, the "nationwide" scope does not appear to be as broad as the defendant claims, as its website suggests the involvement of no more than eleven facilities in nine states. *See* https://landmarkrecovery.com/locations/.

Lawsuit" to that group of individuals. The proposed Notice includes the subsection headings "Purpose of Notice," "Description of the Lawsuit," "Your Right to Participate in this Lawsuit," "How to Participate in this Lawsuit," "Your Legal Representation If You Join," "Effect of Joining or Not Joining This Lawsuit," "Statute of Limitations," "No Retaliation Permitted," and a statement that the Notice is authorized by the court but that the court has taken no position on the merits of the plaintiff's claims. (Doc. No. 20-1.)

The plaintiff specifically requests that the court order the defendant to produce within 14 days of the court's order authorizing notice to similarly situated employees and approving the form of the Notice a list in Excel format containing each potential opt-in plaintiff's name, last known mailing address, last known personal e-mail address, and last known telephone number. (*Id.*) He also asks the court to approve the form of the Notice to be provided to potential opt-in plaintiffs by mail, email, and text message; allow opt-in plaintiffs 90 days from the mailing of the notice to return their Consents to Join; authorize plaintiff's counsel to distribute the notice via U.S. mail, email, and text message; and authorize plaintiff's counsel to send a reminder notice approximately half-way through the 90-day notice period.

Landmark raises various objections to the form and content of the proposed Notice. First, it argues that, if the court authorizes notice to potential opt-in plaintiffs, the scope of the notice and the employees to whom it is sent should be limited to those employed at the seven locations in three states where the plaintiff and his first eight declarants worked as PESs and should only be issued to other PESs, because the plaintiff and his declarants have no knowledge of the practices in other facilities or of the experiences of employees in other positions. It also contends that the term "direct care employee" is overly vague, that it does not have a class of employees identified as "direct care employees," and that its payroll records do not describe employees as falling under

this umbrella.

Regarding the plaintiff's proposed notice, Landmark further objects that the notice as currently worded would apply to "all hourly, non-exempt 'direct care' employees, even if they did not work during their meal breaks and regardless of whether they were paid for the time they worked during a meal break." (Doc. No. 39, at 21.) Landmark argues that notice should be sent to a more narrowly defined and clearly identifiable group of employees by stating that the case "does not apply to employees who received full, uninterrupted meal breaks or to those employees who were compensated for any interrupted meal breaks." (*Id.*) It further contends that, in addition to stating that the "Defendant denies Plaintiff's claims and denies its pay practices violated the FLSA," the following sentence should be added: "Defendant further asserts that it has a published policy to pay any hourly medical employee who is unable to take a full meal break and has, in fact, paid employees who have notified Defendant that they were unable to take a full meal break pursuant to this policy." (*Id.* at 21 n.14.)

The plaintiff responds that the term "direct care employees" is not overly broad or ambiguous, as the plaintiff's "Description of the Lawsuit" in the notice provides further context for the term. He further argues that he has put forward "substantial evidence that all hourly-paid direct care employees were subject to the same unlawful meal break deduction practice." (Doc. No. 57, at 13.) However, he has no objection to adding whatever additional job titles are necessary to the "parenthetical identifying examples of direct care employees." (*Id.*)

With respect to these disputes, the court finds, first, that the plaintiff has submitted sufficient evidence to warrant including within the scope of the notice current and former employees of all of Landmark's non-Ohio facilities that were open and functioning during the

relevant time frame.[10] *Accord, e.g.*, *Crosby v. Stage Stores, Inc.*, 348 F. Supp. 3d 742, 749–50 (M.D. Tenn. 2018) (authorizing notice to employees at 800 stores based on the consistent declarations from plaintiffs who had worked at eight stores). In addition, the plaintiff has adequately established that hourly, non-exempt Landmark employees including Licensed Practical Nurses, Registered Nurses, and Patient Navigators, as well as PESs, were subject to the same meal break practices and policies, such that notice may be provided to current and former employees within these job categories.

However, with regard to the identification of the group of employees entitled to join the lawsuit, that the term "direct care" employee as used by the plaintiff in both the Complaint and the proposed Notice is overly vague. Because the plaintiff has only provided Declarations from PESs, Licensed Practical Nurses, Registered Nurses, and Patient Navigators. the Notice must expressly state that individuals in these job categories are entitled to join the collective action. The plaintiff may continue to use the term "direct care employees" as shorthand, but only if it is expressly defined as encompassing the specifically identified job categories.

The court also finds some merit to the defendant's objection to the breadth of the definition of the employees who would be entitled to participate in the suit, insofar as it includes all hourly direct care employees to whom the automatic meal break deduction applied, even if they were never required to work through a meal break or never had a shortened or abbreviated meal break. The parties should work on agreeing to wording that would limit the scope of the collective action to employees who believe they were adversely affected by the defendant's automatic meal deduction policy by not being fully compensated for all work performed as a result of it. The court also finds it appropriate to include Landmark's requested additional sentence, except that the term

---

[10] The parties should confer on the identity of these facilities.

"medical employee" should either be replaced by "direct care employee" (which will presumably already have been defined) or the term "medical employee" should be defined. In addition, "in fact" should be omitted.[11]

Next, Landmark argues that the FLSA's two-year statute of limitations should presumptively apply to this case, rather than the three-year period that only applies in cases where claims arise from a "willful violation" of the statute. 29 U.S.C. § 255(a). Thus, it contends that notice should be extended only to employees who worked within two years of the date of the court's order authorizing notice. It specifically asserts that the notice period should be "tethered to the date the court approves notice" rather than to the date the plaintiff filed the Complaint or the Motion for Notice, and that the plaintiff's request to include individuals employed "through the disposition of this case" amounts to overreaching, as it includes individuals employed after notice is approved and would require the parties to "continue to send notices and update the collective as the case proceeds." (Doc. No. 39, at 23.) The plaintiff, in response, does not address the latter argument but maintains that the three-year notice period is appropriate at this juncture, because the question of whether the defendant's violation was "willful" is a merits issue that should not be resolved at this point in the proceedings. He also argues that the three years should run backwards either from the date the Complaint was filed or the date his Motion for Notice was filed.

The court finds that notice should be extended to current and former employees who otherwise fit the definition of similarly situated employees and worked for Landmark anytime since March 31, 2020, or three years prior to the date the Motion for Notice was filed. The court

---

[11] In other words, the sentence should read something like this: "Defendant further asserts that it has a published policy to pay any hourly direct care employee who is unable to take a full meal break and that it has paid employees who have notified Defendant that they were unable to take a full meal break pursuant to this policy."

reserves for a later date the questions of whether the plaintiff has sufficient evidence of willfulness to justify application of a three-year limitations period and whether equitable tolling applies. Further, the parties have no ongoing obligation to extend notice to individuals employed after the form of the Notice is approved.

Finally, Landmark argues that the notice period should be reduced to 45 days, rather than the 90 days requested by the plaintiff, and that the court should authorize distribution of notice only through U.S. mail and email and not through text message. The plaintiff objects to a 45-day notice period as unreasonable and points out that courts across the country have endorsed notice by text message. The court finds a 60-day response period to be sufficient and will authorize notice by text message as well as email and U.S. mail. In light of the 60-day response period, interim notice will not be necessary.

## IV.     CONCLUSION

In sum, for the reasons set forth herein, the court will deny the request for "conditional certification" but grant the Motion for Notice, subject to the court's approval of a revised Notice incorporating the modifications identified herein. The parties will be provided an opportunity to reach an agreement as to the form of the Notice and to submit a revised proposed Notice that incorporates the above-referenced findings by or before October 2, 2023. If the parties cannot agree on the language of the Notice, by that same date, both parties shall file their version of the revised proposed Notice.

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge